Ahren A. Tiller, Esq. [SBN: 250608]
BLC Law Center, APC
1230 Columbia St., Ste 1100
San Diego, CA 92101
Phone (619) 894-8831
Facsimile: (866) 444-7026
Email: Ahren.Tiller@blc-sd.com

Attorneys for Plaintiff
TIMOTHY DAWSON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TIMOTHY DAWSON, <br><br> Plaintiff, <br><br> vs. <br><br> SYNCHRONY BANK <br><br> Defendant, | Case No.: <br><br> COMPLAINT FOR DAMAGES FOR VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT (CAL. CIV. CODE §§ 1788-1778.32) AND VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT (47 U.S.C. §227) <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR DAMAGES

## INTRODUCTION

1. TIMOTHY DAWSON (hereinafter referred to as "Plaintiff"), by and through his Counsel of record, brings this action against SYNCHRONY BANK (hereinafter referred to as "Synchrony" or "Defendant") pertaining to actions by Defendant to unlawfully collect a debt allegedly owed by Plaintiff, including but not limited to, collection via the use of an Automated Telephone Dialing

- 1 -

System ("ATDS") and/or Artificial or Prerecorded Voice in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA" [CAL. CIV. CODE §§ 1788-1788.32]), thereby invading Plaintiff's privacy, and causing Plaintiff damages.

2. The California legislature determined that unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system.  The legislature further determined there is a need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty, and due regard for the rights of others.  The legislature's explicit purpose of enacting the Rosenthal Fair Debt Collection Practices Act of California (hereafter "RFDCPA") was to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts.[1]

3. The Telephone Consumer Protections Act (hereafter "TCPA") was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff.  "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs.*, LLC, 132 S. Ct. 740, 744 (2012).

4. In enacting the TCPA, Congress specifically found that "the evidence presented to Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call . . ." *Id.* at §§ 12-13.  See also, *Mims,* 132 S. Ct., at 744.

5. As Judge Easterbrook of the Seventh Circuit explained in a TCPA case

---

[1] CA Civil Code §§ 1788.1(a)-(b)

1

regarding calls similar to this one:

2

The Telephone Consumer Protection Act … is well
known for its provisions limiting junk-fax transmissions.

3

A less-litigated part of the Act curtails the use of
automated dialers and prerecorded messages to cell

4

phones, whose subscribers often are billed by the minute
as soon as the call is answered—and routing a call to

5

voicemail counts as answering the call. An automated
call to a landline phone can be an annoyance; an

6

automated call to a cell phone adds expense to
annoyance.

7

*Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637,

8

638 (7th Cir. 2012).

9

10

6. Plaintiff alleges as follows upon personal knowledge as to herself and his own

11

acts and experiences, and, as to all other matters, upon information and belief,

12

including investigation conducted by his attorneys.

13

14

**JURISDICTION AND VENUE**

15

7. This action is based upon Defendant's violations of the RFDCPA, which is

16

found in California Civil Code §§ 1788 - 1788.32; and the TCPA, which is

17

found in Title 47 of United States Code Section 227, *et seq.*

18

8. This Court has jurisdiction over Defendant, pursuant to 28 U.S.C. § 1331, as

19

the unlawful practices alleged herein involve a federal question under the

20

TCPA.

21

9. This Court further has supplemental jurisdiction over Plaintiff's California

22

Causes of action, pursuant to 28 U.S.C. § 1367(a), as said California state law

23

claims are so related to Plaintiff's Federal TCPA claims in this action, that

24

they form part of the same case or controversy under Article III of the United

25

States Constitution.

26

10. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because

27

all or some of the unlawful practices and violations of law alleged herein

28

occurred and are occurring in the County of Ventura, California.  Furthermore,

1     Defendant regularly conducts business within State of California, County of

2     Ventura, and Plaintiff resides in Ventura County, California.

3

4                         **PARTIES**

5  11. Plaintiff is, and was at all times mentioned herein, a natural person residing in

6        the County of Ventura, in the State of California.

7  12. Plaintiff is a natural person from whom a debt collector sought to collect a

8        consumer debt which was due and owing or alleged to be due and owing by

9        Plaintiff, and therefore Plaintiff is a "debtor" as that term is describe by Cal

10       Civ. Code §1788.2(h).

11  13. On information and belief, Plaintiff alleges that Synchrony is, and at all times

12       mentioned herein was, a Delaware corporation headquartered in Illinois and

13       doing business throughout the country, including this District.  Synchrony is,

14       and at all times mentioned herein, was registered with the California Secretary

15       of State as a foreign corporation doing business within the State of California.

16  14. On information and belief, Plaintiff alleges that Synchrony's primary business

17       operations are the issuance of unsecured consumer loans and credit cards.

18  15. On information and belief, Synchrony regularly engages through the course of

19       its business in collection activities to collect consumer debts owed to it.

20  16. A significant portion of both of Synchrony's business operations are dedicated

21       to collecting debts owed to itself, primarily consumer credit card debt and

22       unsecured consumer loans.  Part of Synchrony's regular business practices are

23       to make repeated phone calls to persons it believes responsible for paying

24       past-due debts.

25  17. Synchrony is, and all times mentioned herein, was a corporation and a

26       "person," as defined by 47 U.S.C. § 153(39).

27  18. Synchrony regularly attempts to collect on "consumer debts" owed it, as that

28       term is defined by Cal. Civ. Code §1788.2(f), through the use of the mails,

*Dawson v. Synchrony Bank - Complaint for Damages*

electronic communication, and the telephone.  Therefore, Synchrony is a "debt collector" as that term is defined by Cal. Civ. Code §1788.2(c), and engages in "debt collection" as that term is defined by Cal. Civ. Code §1788.2(b).

19. At all times relevant hereto, Synchrony used, controlled and or operated an "automatic telephone dialing system" ("ATDS") as that term is defined by 47 U.S.C. § 227(a)(1) and/or placed calls to Plaintiff using an automated or prerecorded voice ("Recorded Voice") as that term is defined in 47 U.S.C. § 227(b)(1)(A).

20. This case involves money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.  Therefore, this action arises out of a "consumer debt" and "consumer credit" as those terms are defined by Cal. Civ. Code §1788.2(f).

## GENERAL ALLEGATIONS

21. Plaintiff incorporates by reference and realleges Paragraphs 1-20 above as if fully stated herein.

22. On or about May of 2018, Plaintiff took out a personal consumer retail installment loan with Synchrony.

23. Plaintiff maintained regular monthly payments due to Synchrony until on or about September of 2018.

24. On or about September of 2018, Plaintiff fell on financial hardship and could no longer maintain the monthly installment payments to Synchrony.

25. Upon going into default, agents for Synchrony called Plaintiff multiple times and requested payment through the use of an ATDS and/or a Recorded Voice, often 1-5 times per day, almost every single day.

26. On multiple occasions, Synchrony left Pre-Recorded Automated Voice messages for Plaintiff to call Synchrony back.

27. Plaintiff sought out and retained an attorney to represent him with regards to

*Dawson v. Synchrony Bank - Complaint for Damages*

1    the debt that Synchrony was collecting on.

2  28. On October 3, 2018, Plaintiff's Counsel drafted a letter wherein he stated that

3    he represented Plaintiff with regards to any claims held or serviced by

4    Defendant Synchrony Bank.  The letter contained Plaintiff's name and a

5    partial account number for identification (hereinafter referred to as: "Cease

6    and Desist Letter No. 1").

7  29. Plaintiff's Counsel sent Cease and Desist Letter No. 1 to Synchrony via

8    facsimile on or about October 3, 2018.

9  30. The facsimile was confirmed via a 3rd party facsimile company to have been

10    successfully transmitted, therefore Defendant Synchrony Bank received the

11    facsimile transmission of Cease and Desist Letter No. 1.

12  31. Despite receiving Cease and Desist Letter No. 1, Defendant Synchrony Bank

13    continued to call Plaintiff incessantly.

14  32. On November 2, 2018, in an effort to get Synchrony to stop calling Plaintiff,

15    Plaintiff's Counsel drafted and sent a second cease and desist letter ("Cease

16    and Desist Letter No. 2").

17  33. In Cease and Desist Letter No. 2, Plaintiff's Counsel again stated that he

18    represented Plaintiff with regards to any claims held or serviced by Defendant

19    Synchrony Bank.  The letter contained Plaintiff's name and a partial account

20    number for identification and stated in bold at the top of the letter **"THIS IS A**

21    **SECOND ATTEMPT PLEASE DO NOT DISCARD."**

22  34. Plaintiff's Counsel sent Cease and Desist Letter No. 2 to Defendant Synchrony

23    Bank via facsimile on or about November 2, 2018.

24  35. The 2nd facsimile was confirmed via a 3rd party facsimile company to have

25    been successfully transmitted, therefore Defendant Synchrony Bank received

26    the facsimile transmission of Cease and Desist Letter No. 2 as well.

27  36. Despite receipt of both Cease and Desist Letters Nos. 1 and 2, Synchrony

28    continued to incessantly call Plaintiff on his cellular telephone, often multiple

times per day to collect on its claim.

37. Further, Synchrony, or its agents or representatives, continued to call Plaintiff using an ATDS and/or Recorded Voice.

38. In both Cease and Desist Letter Nos. 1 and 2, Plaintiff's Counsel provided Plaintiff's name, and explained that a formal demand was being made pursuant to Cal. Civ. Code §1788.14(c), that all further communication with Plaintiff cease, and that any future communication be exclusively sent to Plaintiff's Counsel.

39. In both Cease and Desist Letter Nos. 1 and 2, the verbiage expressly revoked consent to contact Plaintiff in any fashion, including via calling him with the use of an Automated Telephone Dialing System and/or Recorded Voice.

40. Plaintiff's Counsel then advised Plaintiff to pick up the collection calls from Defendant and to state that he had retained counsel.  On his Counsel's advice, Mr. Dawson subsequently informed representatives of Synchrony that Plaintiff had retained counsel and instructed those representatives to cease contacting Plaintiff.

41. In said telephone calls, Plaintiff orally revoked any alleged prior consent to call Plaintiff via the use of an ATDS and/or Recorded voice.  Despite said oral revocation, agents for Synchrony continued to call Plaintiff using an ATDS and/or Recorded Voice.

42. On November 20, 2018, Plaintiff's Counsel drafted a third Cease and Desist Letter to Defendant Synchrony Bank ("Cease and Desist Letter No. 3").  In Cease and Desist Letter No. 3, Plaintiff's Counsel provided Synchrony with Plaintiff's name and the last 4 digits of his social security number.

43. Similar to the previous two (2) Cease and Desist Letters, Cease and Desist Letter No. 3 again expressly stated that Mr. Dawson was represented by Counsel and that pursuant to Cal. Civ. Code § 1788.14(c), Synchrony should have ceased all direct communication with Mr. Dawson.  Additionally, Cease

1    and Desist Letter No. 3 again revoked any alleged consent given by Plaintiff to

2    be contacted by an ATDS or Recorded Voice.

3    44. Plaintiff's Counsel sent Cease and Desist Letter No. 3 to Defendant Synchrony

4    via a third party mailing service known as Docsmit!.

5    45. Docsmit! records reflect that on November 21, 2018 Cease and Desist Letter

6    No. 3 was mailed to Synchrony at:

7    Synchrony Bank
     P.O. Box 105972
8    Atlanta, GA 30348-5972

9    46. Defendant Synchrony received the mailed copy of Cease and Desist Letter No.

10   3 via U.S. Mail.

11   47. Despite receipt of Cease and Desist letter No. 3 via U.S. Mail, Defendant

12   continued to call Plaintiff via the use of an ATDS and/or Recorded Voice.

13   48. On November 28, 2018, Plaintiff's Counsel drafted a fourth Cease and Desist

14   Letter to Defendant Synchrony Bank ("Cease and Desist Letter No. 4").  In

15   Cease and Desist Letter No. 4, Plaintiff's Counsel once again provided

16   Synchrony with Plaintiff's name and the last 4 digits of his social security

17   number, and specifically explained that this will be Defendant's "FINAL

18   WARNING" to cease their conduct prior to Plaintiff initiating litigation.

19   49. Cease and Desist letter No. 4 was once again mailed to Synchrony at:

20   Synchrony Bank
     P.O. Box 105972
21   Atlanta, GA 30348-5972

22   50. Despite receipt of two Cease and Desist Letters by facsimile and two more

23   letters by mail, and despite receiving oral revocation of consent to contact

24   plaintiff via any means including via the use of an ATDS and/or Recorded

25   Voice, Synchrony continued to incessantly call Plaintiff on his cellular

26   telephone, often multiple times per day to collect on its claim.

27   51. Further, Synchrony, or its agents or representatives, continued to call Plaintiff

28   at his place of employment, despite being informed by Plaintiff that he was not

- 8 -

allowed to accept calls and informed Synchrony to stop calling his place of employment as it was inconvenient and harassing for them to do so.

52. Synchrony, or its agents or representatives, have contacted Plaintiff on his cellular telephone over fifty (50) times since October 3, 2018, including through the use of an ATDS and/or Recorded voice as those terms are defined in 47 U.S.C. § 227(a)(1) and/or 47 U.S.C. § 227(b)(1)(A).

53. Despite receipt of two (2) separate letters sent via facsimile and two (2) by mail, along with oral instructions to cease calling Plaintiff via the telephone, all of which provided irrefutable notice that Plaintiff had revoked consent to call his cellular telephone by any means and that he had retained Counsel regarding these alleged debts, Synchrony continues to contact Plaintiff repeatedly to date.

54. These collection calls were made using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and to dial such numbers, and was therefore an automatic telephone dialing system ("ATDS") as that term is defined by 47 U.S.C. § 227(a)(1).

55. As is evidenced by the frequency and rapid succession of the call times and dates, the ATDS computer software automatically called Plaintiff at certain times from random numbers, usually multiple times a day with varying call times.

56. Many of Synchrony's calls to Plaintiff after receiving Cease and Desist Letters Nos. 1-4 contained an "artificial or prerecorded voice" as prohibited by 47 U.S.C. § 227(b)(1)(A).

57. The multiple calls made by Synchrony or its agents after October 3, 2018 were therefore made in violation of 47 U.S.C. § 227(b)(1).

58. Further, when Plaintiff answered the telephone, Synchrony's agents were rude, abusive, and aggressive when they called to collect from Plaintiff.   They

*Dawson v. Synchrony Bank - Complaint for Damages*

1
2
3

would rebuke Plaintiff's requests to cease calling and have continued to harass Plaintiff to date, despite his repeated oral and written requests to cease their harassment.

4
5

59. These interactions and unlawful debt collection practices caused emotional distress to Plaintiff.

6
7
8
9

60. Plaintiff has received so many collection calls by Synchrony that his voicemail has repeatedly filled up, preventing Plaintiff from receiving other important messages and incurring actual charges as a result of his cellular telephone plan.

10
11

61. Upon information and belief, Synchrony regularly makes autodialed telephone calls with Recorded Voices in order to collect on past due debts owed to them.

12
13
14

62. Upon information and belief, Synchrony's telephone equipment has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

15
16
17
18

63. Upon information and belief, the telephone equipment used by Synchrony to place the calls at issue have the capacity to dial telephone numbers automatically from a stored list or database without human intervention, using a random or sequential number generator.

19
20

64. Synchrony's collection calls to Plaintiff described herein, were not made for emergency purposes, as defined by 47 U.S.C. § 227(b)(1)(A).

21
22
23

65. Synchrony's collection calls to Plaintiff describe herein, were not made solely for the purpose of collecting upon a debt owed to or guaranteed by the Federal Government.

24
25
26

66. Synchrony placed the collection calls described herein to a telephone number assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

27
28

67. Synchrony's aforementioned conduct personally affected Plaintiff, as Plaintiff was frustrated and distressed that Synchrony repeatedly interrupted Plaintiff

with unwanted calls using an ATDS and/or Recorded Voice for collection purposes.

68. Through Synchrony's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

69. Synchrony's calls forced Plaintiff to live without the utility of his cellular phones by occupying his cellular telephone with multiple unwanted calls, causing a severe nuisance and lost time.

70. As a result of Synchrony's relentless and harassing collection calls and letters, Plaintiff has experienced anger and disbelief, and feelings of powerlessness, which have resulted in a loss of sleep, loss of appetite, headaches, anxiety and panic attacks, feelings of hypervigilance, paranoia and depression.

71. These calls have consumed him day and have caused a severe disruption to Plaintiff's life, due to the extreme frequency of calls by Synchrony.

72. As a direct and proximate result of the aforementioned harassment committed by Synchrony, Plaintiff has suffered emotional distress.

## CAUSES OF ACTION

### I.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF THE ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT

### (CAL. CIV CODE § 1788.14(c))

73. Plaintiff realleges and incorporates by reference Paragraphs 1 through 72, inclusive, as if fully set forth.

74. Plaintiff's Counsel sent Cease and Desist Letters Nos. 1 and 2 via facsimile to Synchrony, and also sent Cease and Desist Letter No. 3 and 4 via U.S. Mail. Further, Plaintiff orally informed Synchrony's agents that he had retained

1   Counsel.  Therefore, Synchrony was aware, or reasonably should have been

2   aware, that Plaintiff was represented by an attorney, and that Plaintiff no

3   longer wished to be contacted regarding these debts.

4   75. Cal. Civ. Code §1788.14(c) provides in relevant part,

5   No debt collector shall collect or attempt to collect a consumer debt
    by means of the following practices:

6   (c)  Initiating communications, other than statements of
    account, with the debtor with regard to the consumer

7   debt, when the debt collector has been previously notified
    in writing by the debtor's attorney that the debtor is

8   represented by such attorney with respect to the
    consumer debt and such notice includes the attorney's

9   name and address and a request by such attorney that all
    communications regarding the consumer debt be

10  addressed to such attorney, unless the attorney fails to
    answer correspondence, return telephone calls, or discuss

11  the obligation in question.   This subdivision shall not
    apply where prior approval has been obtained from the

12  debtor's attorney, or where the communication is a
    response in the ordinary course of business to a debtor's

13  inquiry.

14  76. By calling Plaintiff over one hundred (100) times since receipt of Cease and

15  Desist Letters Nos. 1, 2, 3 and 4, sent by both facsimile and US Mail,

16  Synchrony violated Cal. Civ. Code §1788.14(c).

17  77. As a result of the constant collection calls from Synchrony, Plaintiff has

18  experienced anxiety, fear and uneasiness, has had difficulty sleeping, shortness

19  of breath, nausea, and has at times been unable to calm down as the constant

20  and harassing collection calls by Synchrony are overwheling.  Plaintiff is

21  constantly afraid to answer his phone and he cringes when his phone rings.

22  78. Therefore, as a direct and proximate result of the unlawful collection efforts by

23  Synchrony, Plaintiff suffered emotional distress.

24

25

26

27

28

*Dawson v. Synchrony Bank - Complaint for Damages*

## II.

## SECOND CAUSE OF ACTION

### NEGLIGENT VIOLATIONS OF THE TCPA

### (47 U.S.C. § 227 ET. SEQ.)

79. Plaintiff realleges and incorporates by reference Paragraphs 1 through 78, inclusive, as if fully set forth.

80. Through the four (4) separate Cease and Desist Letters from Plaintiff's Counsel, sent by both facsimile and US Mail, and orally, Plaintiff revoked any alleged consent for Synchrony to call Plaintiff on his cellular telephone via the use of an ATDS and/or Recorded Voice.

81. The foregoing acts and omissions of Synchrony constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

82. As a result of Synchrony's negligent violations of 47 U.S.C. §227, *et. seq.*, Plaintiff is entitled to an award of $500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

83. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## III.

## THIRD CAUSE OF ACTION

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA

### (47 U.S.C. § 227 ET. SEQ.)

84. Plaintiff realleges and incorporates by reference Paragraphs 1 through 83, inclusive, as if fully set forth.

85. Through the four (4) separate Cease and Desist Letters from Plaintiff's Counsel, sent by both facsimile and US Mail, and orally, Plaintiff revoked

*Dawson v. Synchrony Bank - Complaint for Damages*

any alleged consent for Synchrony to call Plaintiff on his cellular telephone via the use of an ATDS and/or Recorded Voice.

86. The foregoing acts of Synchrony constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227, *et. seq.*

87. Therefore, since Synchrony continued to call Plaintiff despite indisputably being informed to not call Plaintiff on multiple occasions through multiple different means, and that Plaintiff had revoked any alleged prior consent to call Plaintiff's cellular telephone via the use of and ATDS and/or Recorded Voice, Synchrony's acts were willful.

88. As a result of Synchrony's knowing and/or willful violations of 47 U.S.C. §227, *et. seq.*, Plaintiff is entitled to an award of $1,500 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

89. Plaintiff is also entitled to and seeks injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(b)(3)(A).

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff having set forth the claims for relief against Defendant Synchrony Bank herein, respectfully request this Court enter a Judgment against Defendant as follows:

a.      As to the First Cause of Action, an award of actual damages pursuant to Cal. Civ. Code §1788.30(a) according to proof, including compensatory damages for Plaintiff's emotional distress for the harassing telephone calls and other debt collection efforts;

b.      As to the First Cause of Action, an award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code §1788.30(b);

c.      As to the First Cause of Action, an award of reasonable attorney's fees and costs pursuant to Cal. Civ. Code §1788.30(c);

- 14 -

*Dawson v. Synchrony Bank - Complaint for Damages*

d.   As to the Second Cause of Action, $500 in statutory damages for each and every one of Synchrony's over 100 negligent violations of 47 U.S.C. §227(b)(1), pursuant to 47 U.S.C. § 227(b)(3)(B), totaling in excess of $50,000.00.

e.   Injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(b)(3)(A);

f.   As to the Third Cause of Action, $1,500.00 in statutory damages for each and every one of Synchrony's over 100 knowing and/or willful violations of 47 U.S.C. § 227(b)(1), totaling in excess of $150,000.00, pursuant to 47 U.S.C. § 227(b)(3)(C).

g.   For such other and further relief as the Court may deem just and proper.

Dated: January 9, 2019                    By:    /s/ Ahren A. Tiller___
                                                  Ahren A. Tiller, Esq.
                                                  BLC Law Center, APC
                                                  Attorneys for Plaintiff

*Dawson v. Synchrony Bank - Complaint for Damages*

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury on all issues triable by jury.


Dated: January 9, 2019           By:    /s/ Ahren Tiller_____
                                       Ahren A. Tiller, Esq.
                                       BLC Law Center, APC
                                       Attorneys for Plaintiff